Merrimack
No. 92-683

GREEN MOUNTAIN INSURANCE COMPANY

v.

JAN AND GARY GEORGE

December 3, 1993

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the plaintiff.

*Engel, Gearreald & Gardner, PA*, of Exeter (*Mark S. Gearreald* on the brief and orally), for the defendants.

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*Ronald J. Caron* on the brief), by brief for the New Hampshire Trial Lawyers Association, as *amicus curiae*.

THAYER, J. This is an appeal from a ruling by the Superior Court (*Manias*, J.) on a petition for declaratory judgment. The plaintiff, Green Mountain Insurance Company (Green Mountain), brought the declaratory judgment action to determine whether the uninsured motorist benefits provisions of its New Hampshire motor vehicle liability policy applied to an automobile collision that occurred in Massachusetts involving the insured, defendant Jan George, and a Massachusetts automobile owner. The trial court ruled that: (1) New Hampshire law governs the construction of the insurance contract; (2) the Georges were "legally entitled to recover" for injuries, including pain and suffering, proximately caused by the alleged tortfeasor; and (3) the alleged tortfeasor's vehicle was "uninsured" for purposes of Green Mountain's insurance policy. Green Mountain appeals the trial court's rulings. For the reasons that follow, we affirm.

In lieu of an evidentiary hearing, the parties to the declaratory judgment petition submitted an agreed statement of facts. On April 17, 1990, Jan George, a New Hampshire resident, was driving her automobile when she was injured in a two-car accident in Amesbury, Massachusetts. Jan George alleges that Lorraine Castonguay, driver of the second vehicle and a resident of Massachusetts, was legally at fault. At the time of the accident, Jan George and her husband, Gary George, were insured by a Green Mountain motor vehicle liability policy that provided uninsured/underinsured motorist coverage of $50,000 per person, with a limit of $100,000 per occurrence. Lorraine Castonguay was insured by Commerce Insurance Company with liability limits of $50,000 per person, up to $100,000 per occurrence, but subject to the provisions of the Massachusetts "no fault" insurance coverage cap. MASS. GEN. LAWS ANN. ch. 231, § 6D (West Supp. 1993).

In June 1990, the Georges filed a complaint in the United States District Court for the District of Massachusetts against Lorraine Castonguay, alleging negligence and seeking damages for Jan George's medical expenses, lost wages, and pain and suffering, and for Gary George's loss of consortium. The district court granted summary judgment against the Georges because Jan George's medical bills totaled less than the $2,000 threshold required under Massachusetts law for a plaintiff to recover damages for pain and suffering.

After Green Mountain reimbursed the Georges for Jan George's medical treatment, the Georges initiated an arbitration claim against Green Mountain for uninsured motorist benefits, in accordance with the terms of the insurance policy. Green Mountain then brought its declaratory judgment action in the superior court, and now appeals that court's ruling.

This dispute centers mainly on the interpretation of the phrase "legally entitled to recover," as found in the parties' insurance contract. In requiring insurance companies to provide uninsured motorist coverage in all motor vehicle policies, the legislature determined that such benefits should be available "for the protection of persons . . . who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles." RSA 264:15, I (1993). The Georges' insurance policy with Green Mountain incorporates the same "legally entitled to recover" phrase:

> "[The insurer is obligated] [t]o pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by

the insured, caused by the accident and arising out of the ownership, maintenance or use of such uninsured automobile . . . ."

Both the statute and the insurance policy are silent as to which State's laws apply to a determination of "legally entitled to recover." This omission is of particular importance where, as here, the underlying accident involves residents of more than one State.

The parties do not contest the fact that Massachusetts law prevents the Georges from recovering damages for pain and suffering against the alleged tortfeasor. Green Mountain relies primarily on a Rhode Island Supreme Court decision, *Blais v. Aetna Casualty & Sur. Co.*, 526 A.2d 854 (R.I. 1987), to insist that the Georges' inability to pursue a tort action in Massachusetts against the alleged tortfeasor means that the Georges are not "legally entitled to recover" New Hampshire uninsured motorist benefits. We disagree.

We have held that "while the underlying action against the tortfeasor is a tort action, the underinsured coverage claim is based in contract." *Metropolitan Prop. & Liabil. Ins. Co. v. Walker*, 136 N.H. 594, 596, 620 A.2d 1020, 1022 (1993). In contract cases, we apply "the law of the State with the most significant relationship to the contract [to] govern questions regarding the contract's performance." *Glowski v. Allstate Ins. Co.*, 134 N.H. 196, 198, 589 A.2d 593, 595 (1991). When the interpretation of insurance policy language is at issue, our interpretation is governed by the law of the State that is the "principal location of the insured risk." *Id.* (quotation omitted). We note that our choice-of-law test for insurance contracts differs substantially from the test applied by the Rhode Island Supreme Court in *Blais supra*. We refuse to effectively create a no-fault law in this State, where our legislature has refused to enact no-fault legislation, despite the constitutional ability to do so. *Opinion of the Justices*, 113 N.H. 205, 212–13, 304 A.2d 881, 886–87 (1973). In this case, because the Georges' car was garaged in New Hampshire, New Hampshire law governs.

New Hampshire law mandates that insurance carriers provide coverage to insureds for accidents involving uninsured motorists in an amount not less than the amount of liability insurance provided to the insured. RSA 264:15, I. This coverage must be provided to insured New Hampshire motorists whether the accident occurs within the boundaries of this State or beyond them. *See Gay v. Preferred Risk Mut. Ins. Co.*, 114 N.H. 11, 15, 314 A.2d 644, 646 (1974). As a general rule, we construe insurance policy language with

the purpose of honoring the reasonable expectations of the policy-holder. *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982). If the policy's terms are clear and unambiguous, the language "must be accorded its natural and ordinary meaning." *Trombley v. Blue Cross/Blue Shield*, 120 N.H. 764, 770, 423 A.2d 980, 984 (1980) (quotation omitted). If, however, the policy language is reasonably susceptible of at least two different interpretations, one of which favors coverage, the language is ambiguous. *See Coakley v. Maine Bonding & Cas. Co.*, 136 N.H. 402, 410, 618 A.2d 777, 781–82 (1992); *see also* 3 A. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 34.1, at 31 (2d ed. 1992). Such ambiguities must be "construed in favor of the insured and against the insurer." *Trombley*, 120 N.H. at 771–72, 423 A.2d at 985.

With these bedrock legal principles in mind, we turn to the task of applying New Hampshire law to determine whether the Georges are "legally entitled to recover" and whether the Massachusetts tortfeasor's vehicle qualifies as "uninsured."

■ The phrase "legally entitled to recover" is not expressly defined in the applicable statute. *See* RSA 264:15, I. Although the insurance policy similarly does not expressly define the phrase, the Georges urge us to examine the following policy language:

> "[P]rovided, for the purposes of this coverage, determination as to whether the insured . . . is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured . . . and the company or, if they fail to agree, by arbitration."

The Georges submit that the alternative forms of dispute resolution agreed to by the parties under this insurance policy are designed to determine matters of fact, such as who is at fault in a collision and how much the wronged party is entitled to recover from the party at fault. Under such an interpretation, they argue, the "legally entitled to recover" phrase refers to whether the owner or operator of the uninsured automobile was at fault. On the other hand, Green Mountain argues that the phrase refers only to the Georges' entitlement as a matter of law to pursue damages against the alleged tortfeasor. We find the phrase "legally entitled to recover" susceptible of both interpretations propounded by the parties and, therefore, hold that it is ambiguous. *Coakley*, 136 N.H. at 410, 618 A.2d at 781–82. Because the Georges' interpretation would favor coverage, we must construe the phrase in favor of the Georges and against Green Mountain. *Trombley*, 120 N.H. at 771–72, 423 A.2d at 985. We note that other

jurisdictions agree with this interpretation. *See, e.g., State Farm Mutual Automobile Ins. Co. v. Baldwin*, 470 So. 2d 1230, 1233 (Ala. 1985); *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 685 (Okla. 1983). Accordingly, we hold that the Georges' right to recover will depend on their ability to establish fault on the part of the alleged tortfeasor at a subsequent uninsured motorist arbitration hearing.

■ Green Mountain insists that, even under New Hampshire law, the Georges cannot proceed to arbitration because they failed to exhaust their liability claim against the alleged tortfeasor. We reject this contention. The exhaustion requirement in Green Mountain's policy states:

> "The company shall not be obligated to make any payments . . . until after the limits of liability under all bodily injury liability bonds or insurance policies *applicable* at the time of the accident have been exhausted by payments of judgements or settlements."

(Emphasis added.) Under the facts of this case, due to the restrictions of the Massachusetts "no fault" statute, the alleged tortfeasor effectively had no applicable insurance policy for the Georges to exhaust. The Georges proceeded as far as they could with their claim against the alleged tortfeasor by filing suit in the federal district court in Massachusetts, only to have that claim dismissed as a matter of Massachusetts law. We hold that the Georges did exhaust their legal claim against the alleged tortfeasor, and therefore are not precluded, on the basis of the exhaustion requirement, from proceeding to uninsured motorist arbitration in accordance with the terms of the insurance contract.

■ ■ Lastly, Green Mountain argues that the Massachusetts tortfeasor's vehicle cannot qualify as an "uninsured" or "underinsured" automobile because her policy with Commerce Insurance had liability limits of $50,000 per person and, subject to this per person limitation, $100,000 per occurrence, thereby equalling the Georges' coverage. This argument does not withstand close analysis. Green Mountain defines an underinsured motor vehicle as

> "a motor vehicle with respect to the ownership, maintenance, or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies *applicable* at the time of the accident is less than the sum of the applicable limits of bodily injury liability under this and any other similar insurance available to the insured."

(Emphasis added.) As we stated in our discussion of the exhaustion requirement, the alleged tortfeasor had only limited insurance applicable to this collision that would afford any coverage to the Georges, because Jan George's medical bills did not meet the Massachusetts threshold requirement for recovery of damages for pain and suffering. For the purposes of interpreting the Georges' insurance policy, therefore, the alleged tortfeasor was effectively "uninsured." To hold otherwise would undermine the Georges' reasonable expectation that their insurance carrier would cover them for losses sustained in an accident with a tortfeasor who cannot compensate them for their injuries. We will not override the reasonable expectations of the policyholder in this case, *see Town of Epping*, 122 N.H. at 252, 444 A.2d at 498, especially in light of our affirmation that "[t]his State's paramount interest is to see that accident victims receive some kind of compensation for their injuries." *LaBounty v. American Insurance Co.*, 122 N.H. 738, 743, 451 A.2d 161, 164 (1982).

 Under the rule established in *Vigneault v. Travelers Insurance Co.*, 118 N.H. 75, 79, 382 A.2d 910, 913 (1978), the Georges may recover the difference between their uninsured motorist coverage and that which they can recover from the alleged tortfeasor. Because, from the Georges' perspective, the alleged tortfeasor effectively has no liability coverage, the Georges may be entitled to the full extent of their uninsured motorist coverage. Green Mountain's assertion that this holding poses a potential detriment to the insurance industry, due to an effective preclusion of subrogation rights, is disingenuous. The fact that Green Mountain cannot assert a claim in Massachusetts against the alleged tortfeasor actually legitimizes the Georges' claim that the alleged tortfeasor is "uninsured." Green Mountain cannot now seek to avoid coverage for which it has already charged the Georges a premium. Moreover, nothing in the parties' insurance contract conditions coverage on Green Mountain's opportunity to exercise its subrogation rights. We hold that the Georges' claim may proceed to arbitration.

*Affirmed.*

All concurred.